IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **BRITTNEY SANTOS**, on behalf of herself and others similarly situated, | ) ) ) Case No. 3:23-cv-00969-JRK |
| Plaintiff, | ) ) Judge James R. Knepp II ) |
| vs. | ) **JOINT MOTION FOR APPROVAL** ) **OF FLSA COLLECTIVE ACTION** |
| **AGAVE & RYE LIMITED LIABILITY COMPANY,** | ) **SETTLEMENT** ) ) |
| Defendant. | ) ) |

Named Plaintiff Brittney Santos ("Named Plaintiff") and Defendant Agave & Rye Limited Liability Co. ("Defendant") (collectively, the "Parties") respectfully move the Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations and facilitated by a third-party neutral. The following documents are submitted for the Court's approval:

**Exhibit 1**: Collective Action Settlement Agreement and Release (the "Agreement"), along with its Exhibit A (Claim Form) and Exhibit B (Notice of Settlement);

**Exhibit 2**: Declaration of Robi J. Baishnab ("Baishnab Dec."); and,

**Exhibit 3**: Proposed Order approving settlement.

In support of this Joint Motion, the Parties state as follows:

**I.  STATEMENT OF FACTS**

**A.  Factual and Procedural Background.**

On May 12, 2023, Plaintiff filed her collective and class action Complaint in the United States District Court for the Norther District of Ohio, *Santos v. Agave & Rye Limited Liability Company*, with Case No. 3:23-cv-00969 (the "Action"). In the Action, Named Plaintiff asserted claims against Defendant, on behalf of herself and others similarly situated under the Fair Labor

1

Standards Act ("FLSA") and Article II § 34a of the Ohio Constitution. Specifically, the Action alleges that Defendant violated the FLSA and Ohio law by paying the Named Plaintiff and others similarly situated at a tip-credit rate for all time worked, including opening and closing duties that had no relation to tip producing work, and for side work, or tip-supporting work, that exceeded 30 minutes at a time or exceeded 20% or more of the employee's work time. (Doc. 1).

On June 29, 2023, Defendant filed its Answer in which it denied all liability, and Defendant continues to deny any liability. (Doc. 16; Agreement at ¶¶2, 26).

To avoid the burden, expense, risks and uncertainty of litigation, the Parties agreed to engage in good faith, arm's-length settlement discussions, including mediation before engaging in substantial discovery. (Agreement at ¶3). The case was stayed pending the outcome of mediation. (*See e.g.*, Docs. 20-23).

In preparation for mediation, Defendant produced certain time and pay data for the putative collective. Plaintiffs' Counsel represents that they engaged the services of a PhD data scientist to construct a damages model using the produced data, which was shared with the mediator and Defendant's Counsel. The model served as a basis of negotiations. (Agreement at ¶4; Baishnab Dec. at ¶12).

On October 23, 2023, the Parties participated in a full-day mediation before third-party neutral, Frank A. Ray, and reached an agreement. (Doc. 26). The terms of the Parties' agreement are embodied in the attached **Exhibit 1**. (Agreement at ¶5).

    **B.**    **Summary of the Settlement.**

Settlement was reached having been facilitated by third-party neutral, Frank Ray, and through good faith, arms' length negotiations between Counsel who are experienced in wage and hour litigation, including collective and class actions and settlements. Settlement resolves bona fide disputes that have existed throughout the litigation. (Baishnab Dec. at ¶13).

The Settlement includes **679** current and former bartenders and servers employed by Defendant in Ohio who were paid the tipped minimum wage at any time from May 12, 2020, to July 26, 2023. (Agreement at ¶14).

The total settlement amount is **$250,000.00**, which includes: 1) all Individual Settlement Payments (defined below); (2) Service Award for Named Plaintiff (defined below); (3) Plaintiffs' Counsel's attorneys' fees of one-third of the Global Settlement Fund; (4) Plaintiff's Counsel's litigation expenses; and (5) the costs of settlement administration. In addition, Defendant will make all required employer contributions with respect to any portions of the Individual Settlement Payments and the Service Award treated as wages under Internal Revenue Service ("IRS") Form W-2, and these contributions will not be deducted from the Global Settlement Fund. (*Id*. at ¶15).

For purposes of Settlement, the Parties agree that Plaintiff and the Eligible Settlement Participants are similarly situated under 29 U.S.C. § 216(b) of the FLSA. (*Id*.at ¶27). A Notice of Settlement will be sent to the Eligible Settlement Participants, along with a Claim Form to join the Settlement. (*Id*. at ¶¶9, 18, 36-40). Those who join the Settlement will become Claimants and receive settlement payments and, in exchange, they will release the Released Parties from the Released Claims for the Release Period, as outlined in the Agreement. (*Id*. at ¶¶8, 19-21, 50).

After deducting Service Award, attorneys' fees, litigation costs, and settlement administration costs, the remaining amount will be distributed to Claimants according to their respective *pro* rata share of the Net Settlement Fund as calculated in Plaintiffs' Counsel's damages model during the Release Period. (Agreement at ¶16). The average payment exceeds approximately $221. (Baishnab Dec. at ¶33).

The Settlement provides for Service Awards of **$2,500.00** to Plaintiff in consideration for her substantial assistance rendered to Plaintiffs' Counsel and in pursuing the rights of all Eligible

3

Settlement Participants. (Agreement at ¶¶25, 32; Baishnab Dec. at ¶34). Plaintiff provided substantial time and effort in communicating with Plaintiffs' Counsel during the prosecution of the Action and negotiations and was available throughout the whole day of mediation. (Baishnab Dec. at ¶34). Defendant agrees this amount is reasonable and does not contest this application. (Agreement at ¶32).

        **C.**       **Plaintiffs' Counsels' approach to settlement.**

As detailed in the attached **Exhibit 2**, Plaintiffs' Counsel takes a pragmatic approach in assessing the objective, mathematical value of a case. (Baishnab Dec. at ¶¶15-33). Specifically, Plaintiffs' Counsel explains that legal scholarship has observed that it is often the case that "both plaintiffs and defendants frequently reject settlement proposals that would have been financially advantageous." (*Id.* at ¶16, citing Eyal Zamir, *et al.*, *The Oxford Handbook on Behavioral Economics and the Law*, §24, 623 (1st ed. 2014). Likewise, many cases settle for an inappropriate amount. *Id.*

To avoid making poor settlement decisions, Plaintiffs' Counsel has adopted a systematic approach to analyzing settlements that is grounded in empirical research and designed to achieve the maximum utility of a lawsuit. Their approach is also specifically designed to avoid various decision-making biases that could result in the rejection of a favorable settlement or result in one that is disadvantageous to their clients. (Baishnab Dec. at ¶17).

One such bias is the "subadditivity effect," which is the tendency of people to judge the probabilities of the whole to be less than the probabilities of the parts. *Id.* at 626. For example, in one study, attorneys were asked to calculate probabilities of being awarded four different ranges of damages. The collective probabilities summed to 170%. (Baishnab Dec. at ¶18, citing Eyal Zamir, *et al.*, *The Oxford Handbook on Behavioral Economics and the Law*, §24, 623 (1st ed. 2014)).

4

From Plaintiffs' Counsel's own personal experience and in speaking with colleagues, attorneys generally conclude that a case with an estimated 50% chance of winning each of three different issues in the litigation is a "50/50" case. But it is not. Rather, there is only a 12.5% chance when the probabilities of all three issues are compounded (*i.e.*, 0.5 X 0.5 X .5 = 0.125). (Baishnab Dec. at ¶19, citing *Id*. at §24, 623).

Other biases include the self-serving bias, which causes litigants to overestimate the chances that an objective third party (i.e., the Court or a jury) will favor their perspective. Overoptimism and overconfidence biases also tend to result in poor predictions. (Baishnab Dec. at ¶20, citing §§13, 24, 336-340, 623, 626).

These cognitive biases affect all individuals to some degree. They are particularly unhelpful in analyzing the reasonableness of a settlement. (Baishnab Dec. at ¶21, citing *How Lawyer's Intuitions Prolong Litigation*, Cornell Law Faculty Publications. Paper 602, 109 (2013)).

To mitigate these biases, Plaintiffs' Counsel performs an Expected Value ("EV") calculation for nearly all cases, which can be generalized as the anticipated value of a case at some point in the future after various uncertain events have occurred. (Baishnab Dec. at ¶22, citing *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987)(explaining an EV calculation and holding that a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial….")).

Plaintiffs' Counsel calculates the EV prior to mediation and before any significant settlement discussion. Essentially, the EV is calculated by summing the product of the probabilities of winning at each stage of the litigation and the expected outcome of success and the product of the probabilities of losing at each stage and zero, that is, EV = (probability of win X expected damages) + (probability of loss X $0) - Costs. (Baishnab Dec. at ¶23, citing Eyal Zamir, *et al*., The

5

*Oxford Handbook on Behavioral Economics and the Law*, §24, 624 (1st ed. 2014). The EV of a case is calculated and visualized using the decision tree software TreeAge Pro©. (Baishnab Dec. at ¶23).

A decision tree was created with various Decision and Chance (i.e., probability) nodes at each stage of the case that has a win/loss potential.[1] At the end of each "branch" in the tree is a Payoff node, which is the sum of the probabilities multiplied by damages for the branch. The probabilities and values of the entire case are then summed, resulting in a final EV. (Baishnab Dec. at ¶24).

Both potential damages and win/loss probabilities were determined through a collaborative process involving attorneys familiar with the case through participation in review of documents, interaction and interviews with our clients, and/or knowledge of relevant case law. All participating attorneys also have significant experience with state and federal wage and hour collective and class action litigation generally. Therefore, damages and probabilities were determined by a combination of averaging attorney estimates and/or consensus opinion. Empirical research establishes that a collaborative process like this results in more reliable predictions of case value than a single attorney's experience and intuition. (Baishnab Dec. at ¶25, citing Jonas Jacobson, et al., *Predicting Civil Jury Verdicts: How Attorney's Use (and Misuse) a Second Opinion*, Journal of Empirical Legal Studies, Volume 8, Issue S1, 99-119, (2011)).

Plaintiffs' Counsel represents that multiple Decision nodes were identified, each with corresponding Chance and Payoff nodes, such as: (1) collective/class or individual treatment; (2) results of summary judgment; (3) results of a jury trial; (4) a determination regarding willfulness;

---

[1] For a general discussion of the use of decision trees in litigation, the Court can refer to the following law review article: Marc B. Victor, *Decision Tree Analysis: A Means of Reducing Litigation Uncertainty and Facilitating Good Settlements*, 31 Ga. St. U. L. Rev. (2015).

and (5) a determination regarding liquidated damages. Considerations also included "high," "mid," and "low" win rates. Settlement analysis, therefore, used both the damages model and node chance percentages in determining the EV for this case. (Baishnab Dec. at ¶26).

In this calculation, Plaintiffs' Counsel analyzed each potential risk of loss (*i.e.*, whether collective/class treatment was obtainable, summary judgment, willfulness, good faith, and potential jury awards) and assigned a probability value to each potential risk. The decision tree software compounded each of these probability values and applied those values to the damages model. This exercise allowed Plaintiffs' Counsel to fully appreciate the entire risk picture of this case. The actual calculated EV can be submitted to the Court for in camera review, if the Court so directs. (*Id.* at ¶27).

Each node/stage reflects a future point in time, where Named Plaintiff cannot reach without going through weeks, months, and possibly years, plus thousands of dollars of discovery. Discovery would include written discovery, document production, and depositions. Expert time studies can cost upwards of $30,000-$50,000, if not more, depending on the number of studies needed and locations analyzed. (*Id.* at ¶28).

The chances of winning or losing is more than just 50% one party wins or loses. Rather, the probabilities need to be compounded. Each node has a potential for winning and losing. For Named Plaintiff to achieve the maxim estimated damages, she would need to win at every single stage, or node of risk of loss. It would be akin to having to roll six sixes with six dice in one roll. (*Id.* at ¶29).

If Named Plaintiff lost on collective/class treatment, she could only proceed individually. If she did not survive summary judgment or at trial, the value of the case would essentially be zero. If Named Plaintiff could not prove willfulness, then FLSA damages would be limited to only two

7

years. If Defendant successfully established good faith, then damages would not be liquidated. And, even if Named Plaintiff won at trial, the yet-to-be-identified jury would need to be persuaded as to the amount of work alleged to be unpaid and the level of damages awarded, reflected by the probabilities at the terminal nodes of "high", "mid", and "low" damages. (*Id*. at ¶¶30-31).

After compounding probability, Plaintiffs' Counsel calculated only a 32% chance of successfully prevailing at collective/class treatment, summary judgment, trial, and willfulness, and only a 6% chance of obtaining the maximum alleged damages. Here, the total settlement amount exceeds the calculated expected value, which supports Plaintiffs' Counsel's strong belief that the settlement is fair, reasonable, and in the best interests of the Eligible Settlement Participants. Additionally, Plaintiffs' Counsel thoroughly discussed the settlement with Named Plaintiff, who likewise agrees that the settlement is fair, reasonable, and in the best interests of the Eligible Settlement Participants. (*Id*. at ¶¶32-33).

## II.  The Court should grant FLSA approval.

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

### A.  The Seven-Factor Standard is satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D.Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir.1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to

8

determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13 (E.D. Ky. Oct. 23, 2008).

Here, Settlement satisfies the seven factors used by the Sixth Circuit when evaluating class/collective action settlements: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir.2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir.1983)), *Crawford*, 2008 WL 4724499 at *3.

1. **No indicia of fraud or collusion exists**.

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 U.S. Dist. LEXIS 144274, at *6 (S.D. Ohio Aug. 12, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)).

Here, Defendant denies all liability and the Agreement was achieved only after arms-length and good faith negotiations between experienced counsel after a full day's mediation before a third-party neutral. (Agreement at ¶¶3, 5; Baishnab Dec. at ¶13). As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

2. **The complexity, expense, and likely duration of continued litigation favor approval**.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular,

9

are expensive and time-consuming. *Brent v. Midland Funding, LLC,* No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763, at *43 (N.D. Ohio Sep. 1, 2011) (Aug. 17, 2018) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.") (further citation omitted).

If this case had not settled, the Parties would be required to engage in costly litigation and discovery, such as written discovery and depositions. Settlement, on the other hand, provides substantial relief to the Eligible Settlement Participants promptly and efficiently, and amplifies the benefits of that relief through the economies of collective resolution. (Baishnab Dec. at ¶14).

### 3. The amount of discovery engaged in by the Parties.

The Parties engaged in substantial investigation and analysis before and while negotiating the Settlement. Specifically, Defendant produced certain time and pay data for the putative collective. Plaintiffs' Counsel engaged the services of a PhD data scientist to construct a damages model using the produced data, which was shared with the mediator and Defendant's Counsel. (Agreement at ¶4; Baishnab Dec. at ¶12). Both sides are represented by competent and skilled wage and hour attorneys. (Baishnab Dec. at ¶¶3-11, 13). During negotiations, Counsel argued vigorously for their respective positions, and disputes remain, including whether Defendant was liable, whether any wages are owed, whether liquidated damages are recoverable, whether Defendant acted willfully, whether the matter could proceed collectively, and to what extent Named Plaintiff could prove damages at trial, if any. (Agreement at ¶¶2, 5, 30; Baishnab Dec. at ¶13). Accordingly, this factor supports settlement approval.

### 4. The likelihood of success on the merits.

Settlement represents a compromise of disputed claims. Specifically, the Action alleges that Defendant violated the FLSA by not paying the lawful minimum wage to its servers Specifically, the Action alleges that Defendant violated the FLSA and Ohio law by paying the

Named Plaintiff and others similarly situated at a tip-credit rate for all time worked, including opening and closing duties that had no relation to tip producing work, and for side work, or tip-supporting work, that exceeded 30 minutes at a time or exceeded 20% or more of the employee's work time. (Doc. 1; Agreement at ¶1). On the other hand, Defendant disputes the asserted claims and raised a number of defenses during negotiations. (Doc. 16; Agreement at ¶26).

As detailed above, Plaintiffs' Counsel spent a significant amount of time calculating an EV in this case prior to mediation. After compounding probability, Plaintiffs' Counsel calculated only a 32% chance of successfully prevailing collective/class treatment, summary judgment, trial, and willfulness, and only a 6% chance of obtaining the maximum alleged damages. Here, the total settlement amount exceeds the calculated expected value, which supports Plaintiffs' Counsel's strong belief that the settlement is fair, reasonable, and in the best interests of the Eligible Settlement Participants. (Baishnab Dec. at ¶¶32-33).

### 5. The opinion of Plaintiffs' Counsel favors approval.

"The recommendation of Plaintiffs' Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993); and *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018) (citing *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)).

Here, Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions. At all times, they have acted in good faith and vigorously advocated in the best interests of the Plaintiff and the other Eligible Settlement Participants. And, as outlined below, based on the calculated EV, Plaintiffs' Counsel is confident that the settlement is fair, reasonable, and in the best interests of the Eligible Settlement Participants. (Baishnab Dec. at ¶¶3-11, 15, 33). Accordingly, this factor favors approval of the settlement.

11

**6.     The reaction of absent collective members.**

Settlement provides clear and easy to understand notice of the settlement and provides for 90-days by which Eligible Settlement Participants can join. Additionally, unlike Rule 23, participants must affirmatively join, and the Parties have agreed that the Court will retain jurisdiction over performance of the Settlement. (Agreement at ¶62). Additionally, Plaintiffs' Counsel thoroughly discussed the settlement with Named Plaintiff, who likewise agrees that the settlement is fair, reasonable, and in the best interests of the Eligible Settlement Participants. (Baishnab Dec. at ¶33).

**7.     The public interest.**

"Public policy generally favors settlement of class action lawsuits." *Wright*, 2018 U.S. Dist. LEXIS 140019, at *13 and *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *11 (N.D. Ohio Mar. 26, 2019) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D.Ohio 2007)). Like in *Wright*, "the settlement confers immediate benefits on the Settlement collective, avoids the risks and expense in further litigation, and conserves judicial resources." *Id*. Additionally, Plaintiffs' Counsel is aware of no reason why an Eligible Settlement Participant would not be happy with the results, as settlement exceeded the calculated expected value and the average payment exceeds approximately $221.00. (Baishnab Dec. at ¶33).

Further, Named Plaintiff obtained nine (9) declarations from Eligible Settlement Participants, who testify that that they believe that the settlement is fair and equitable, that they are happy with the projected amount of their settlement awards which greatly benefit them and their families, and that they urge the Court to approve the settlement. (**Exhibit 4**). Therefore, the Court should find that this factor supports approval of the Settlement.

B.      **The Settlement distributions are fair, reasonable, and adequate**.

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *See e.g.*, *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *15 (N.D. Ohio Mar. 8, 2010); and *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *18 (S.D. Ohio Sep. 9, 2016) (citations omitted).

Plaintiffs' Counsel conducted a thorough assessment of the claims and defenses, including a calculated expected value, which exceeded the total settlement amount. (Baishnab Dec. at ¶¶12, 15-33). Importantly, Judge Posner writing for a Seventh Circuit panel concluded that an EV is the proper method for determining the fairness of a class settlement: "A settlement is fair to the plaintiffs in a substantive sense…if it gives them the expected value of their claim if it went to trial…." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987)(explaining an EV calculation where a settlement of $7 million would be justified even where theoretical damages not accounting for compounded risk of loss could be up to $1 billion). *See also*, *Siddiky v. Union Square Hosp. Grp.*, 2017 U.S. Dist. LEXIS 75301, at *16 (S.D.N.Y. May 17, 2017); *Anderson v. Torrington Co.*, 755 F. Supp. 834, 838 (N.D. Ind. 1991); *Chase v. Viaquest Residential Servs.*, S.D. Ohio No. 22-cv-1974, 2023 U.S. Dist. LEXIS 41416, at *3-4 (Mar. 10, 2023); *Cheikh Fassa, ex rel. Himself & Others Similarly Situated v. Express Inc.*, S.D. Ohio No. 2:21-c:22-cv-v-542, 2022 U.S. Dist. LEXIS 73599, at *4 (Apr. 5, 2022); *Johnson v. Centor, Inc.*, No. 5:19-cv-2622, 2021 U.S. Dist. LEXIS 213003, at *3 (N.D. Ohio Nov. 4, 2021). Accordingly, the settlement is fair, reasonable, and adequate.

1.      **The individual payments are reasonable and adequate.**

As mentioned above, as part of negotiations, Defendant produced certain time and pay data for the putative collective/class. A PhD data scientist constructed a damages model using the

produced data, which was shared with the mediator and opposing counsel, and used as the basis for negotiations. (Agreement at ¶4; Baishnab Dec. at ¶12). The total Settlement exceeds Plaintiff's pre-mediation EV calculation and provides for an average payment exceeding approximately $221. Accordingly, and consistent with the opinion of Plaintiffs' Counsel, payments are reasonable and adequate. (Baishnab Dec. at ¶33).

### 2. The Service Award is proper and reasonable.

The Agreement provides for a Service Award of **$2,500.00** to Named Plaintiff in recognition of, and in consideration for, her substantial assistance rendered to Plaintiffs' Counsel and in pursuing the rights of all Eligible Settlement Participants. (Agreement at ¶32; Baishnab Dec. at ¶34). Courts routinely approve service awards to plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *18, and *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *7.

Here, Named Plaintiff provided substantial time and effort in communicating with Plaintiffs' Counsel during the prosecution of the Action and negotiations and negotiations and was available throughout the whole day of mediation. She also put her name on the line, filing a lawsuit on the public docket, and taking a risk of potentially being "black-listed." (Baishnab Dec. at ¶34). Defendant agrees this amount is reasonable and does not contest this application. (Agreement at ¶32).

### 3. The attorneys' fees to Plaintiffs' Counsel are proper and reasonable.

After the Court has confirmed that the terms of settlement are fair to the Plaintiffs, it may review the Agreement as to the provision of fees and costs to Plaintiffs' Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. §216(b).

In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The Agreement provides a payment of attorneys' fees to Plaintiffs' Counsel in the amount of one-third (1/3) of the total settlement amount, or **$83,333.33**. "The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement." *Satterly v. Airstream, Inc.*, S.D. Ohio No. 3:19-cv-32, 2020 U.S. Dist. LEXIS 210868, at *28 (Sep. 25, 2020) (citing *Rawlings v. Prudential Bache Prop., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993)). Indeed, the "percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share…." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010). "In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms*, N.D. Ohio No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *10-11 (July 27, 2018); *see also, Osman v. Grube, Inc.*, N.D. Ohio

15

No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, at *6 (May 4, 2018) ("One-third of the common fund is a reasonable attorneys' fee award and has been approved in similar FLSA collective actions in this judicial district.") (Internal citation omitted).

This conclusion was reiterated in *Harsh v. Kalida Mfg.*, N.D. Ohio No. 3:18-cv-2239, 2021 U.S. Dist. LEXIS 175869, at *20 (Sep. 13, 2021). In *Harsh*, the Court held that while a Court can utilize either the percentage-of-the-fund or the Lodestar approach to determine whether an award of attorneys' fees is reasonable, the percentage-of-the-fund approach is more appropriate in class and collective actions, as it "rewards counsel for success and penalizes it for failure." *Id.* at *19-20. The Court further noted that the Lodestar method was more appropriate in wage and hour cases that "involve relatively small claims and therefore small amounts of damages in question," because "counsel for employees will inevitably be required to expend substantial resources and time, sometimes accruing fees several times greater than the value of damages in the case." *Id.* at *20. In contrast, in cases involving a common settlement fund the Court found that it "sees no compelling reason, let alone any reason, to deviate from" a request for one-third of the fund. *Id.*

Further, Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation costs. They not only invested time, but also paid significant expenses up front, including the filing fee, service, and processing of produced data and creation of damages model. They will not be paid for any time during effectuation of the settlement. (Baishnab Dec. at ¶¶35-36). "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, S.D. Ohio No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (Dec. 3, 2019); *see also, Barnes*, 2019 U.S. Dist. LEXIS 65657, at *15 ("Class Counsel provided representation on a purely contingency fee basis, advancing all

16

litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk").

Courts in this district acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *16. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiffs' Counsel for their prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, S.D. Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters."). An award of one-third (1/3) of the settlement fund is reasonable and still advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d at 930; and *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

Defendant agrees this request is reasonable and do not oppose the award of fees. (Agreement at ¶31). Further, the attached nine (9) declarations from Eligible Settlement Participants testify that they understand that Plaintiffs' Counsel took this case on a contingent basis, which means Plaintiffs' Counsel covered all the costs so far and took the risk of receiving no compensation and losing all incurred expenses if a favorable result was not achieved, and that they urge the Court to approve the settlement. (**Ex. 4**, at ¶¶5-6). Accordingly, the Court should approve the requested attorneys' fees.

### 4. The Court should authorize reimbursement of costs.

Plaintiffs' Counsel should also be reimbursed their litigation expenses, which are presently **$3,075.47**. (Baishnab Dec. at ¶36). "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371 at *20. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id*.

Expenses include filing fee, service of process, postage, and analysis of the data production and creation of the damages model. (Baishnab Dec. at ¶36). Because Plaintiffs' Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in obtaining settlement, the Court should award reimbursement of these expenses to Plaintiffs' Counsel. Defendant agrees this request is reasonable and does not oppose the reimbursement of costs. (Agreement at ¶31).

### III. CONCLUSION.

The Parties submit that this settlement is a fair, reasonable, and adequate resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve Plaintiffs' Counsel's request for attorney fees and expenses; (3) approve the requested service payments; and (4) retain jurisdiction to enforce the settlement, if necessary.

Respectfully submitted,

| **NILGES DRAHER LLC** | **FROST BROWN TODD LLP** |
|---|---|
| */s/Robi J. Baishnab* | */s/Jeffrey N. Lindemann (with permission)* |
| Jeffrey J. Moyle (0084854) | Jeffrey N. Lindemann (0053073) |
| Robi J. Baishnab (0086195) | Steven M. Tolbert, Jr. (0096834) |
| 1360 E. 9th St., Suite 808 | One Columbus – Suite 2300 |
| Cleveland, OH 44114 | 10 West Broad Street |
| Telephone: (216) 230-2955 | Columbus, OH 43215-3466 |
| Facsimile: (330) 754-1430 | Telephone: (614) 464-1211 |
| Email: jmoyle@ohlaborlaw.com | Facsimile: (614) 464-1737 |
| rbaishnab@ohlaborlaw.com | jlindemann@fbtlaw.com |
| | stolbert@fbtlaw.com |
| *Counsel for Plaintiffs* | *Counsel for Defendant* |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed for service via the Court's CM/ECF system on this December 7, 2023. Parties may access this filing through the Court's system.

*/s/ Robi J. Baishnab*
*Counsel for Plaintiffs*